## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STACY L. MORRIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN,[1] )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | CIVIL ACTION<br><br>No. 12-2057-JWL |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability benefits (SSD) and Supplemental Security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding that the Commissioner failed to apply the correct standard, the court ORDERS that the decision shall be REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case.

**I.  Background**

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD and SSI on May 17, 2006 and October 1, 2007 respectively, alleging disability beginning April 18, 2003. (R. 19).[2] The SSD application was denied initially and upon reconsideration, the SSI application was elevated to the hearing level and a hearing on both applications was held before an Administrative Law Judge (ALJ). (R. 19, 539-72). The ALJ issued a decision denying the applications, and Plaintiff sought and was granted review of that decision. (R. 19, 82-89). The Appeals Council remanded for additional proceedings and a new decision. (R. 19-20, 88-89). On remand, additional evidence was taken and another hearing was held. (R. 20, 509-38). Plaintiff appeared with counsel for a second hearing before a different ALJ, Robert A.

---

[2]This case reflects a procedural history in which it was first decided by an ALJ in June, 2008 (R. 38-48) but was reviewed by the Appeals Council and remanded for further proceedings and a new decision. (R. 86-89). For some reason unknown to the court, all 314 pages of the record exhibits which were before the first ALJ were apparently consolidated and are listed in the "List of Exhibits" in this case in "Sections" entitled only A, B, D, E, F, and SSI, without identifying the exhibits individually. (R. 1).
    D. Kan. Rule 7.6(b) provides that "The filing party must separately label any exhibits attached to motion briefs or memoranda and file an index of such exhibits." The Commissioner did not do so in this case, and the court will not search through an undifferentiated mass of 314 pages of exhibits to find documents which are not cited with particularity in the Commissioner's decision and in the parties filings before this court.
    On the first page of his decision (R. 19), the ALJ stated that Plaintiff filed her applications on the dates stated above, and that the SSI application was quickly elevated to the hearing level along with the SSD application. However, on the sixteenth page of the decision (R. 34), the ALJ stated (almost certainly erroneously) that both applications were filed on May 17, 2006. Moreover, in the decision, the ALJ did not cite to the page number in the administrative record at which Plaintiff's applications appear  Therefore, the court has not verified the dates of Plaintiff's applications. The Commissioner must do so on remand.

Evans, on July 31, 2009.[3] (R. 20). At the hearing, testimony was taken from Plaintiff, from a medical expert (ME), and from a vocational expert (VE). (R. 20, 513-38).

On November 9, 2009 ALJ Evans issued his decision.[4] He noted that Plaintiff had filed previous applications for SSD and SSI benefits which were denied at the initial level on January 19, 2005. (R. 20). He found no basis to reopen that determination and stated that any discussion in the current decision of evidence concerning the period on or before January 19, 2005 "is not intended to be construed as a reopening of the determination on the previous applications nor is it intended to be construed as a re-adjudication of the merits of the prior claims." (R. 20). In the decision, he found that Plaintiff has not been disabled within the meaning of the Act "from April 18, 2003 through the date of this decision" (November 9, 2009). (R. 33). Consequently, he denied both of Plaintiff's applications for benefits. (R. 34).

Plaintiff once again requested Appeals Council review and submitted a brief and additional evidence for the Council's consideration. (R. 13-14, 487-508). The Council issued an order making the brief and the additional evidence a part of the administrative

---

[3]Apparently, this was either a video hearing or a telephone hearing, the decision does not say. The decision states that Plaintiff "appeared and testified at a hearing held on July 31, 2009, in Kansas City, MO" (R. 20), whereas the transcript of the hearing asserts that it was held at "Long Beach, California" (R. 509, 511), and the ALJ introduced himself, "I'm from Long Beach, California." (R. 511).

[4]Because the Commissioner's decision in this case was issued on November 9, 2009, all citations to the Code of Federal Regulations in this opinion refer to the 2009 edition of 20 C.F.R. Parts 400 to 499, revised as of April 1, 2009, unless otherwise indicated.

3

record in this case, and considered that evidence in deciding whether to review the decision. (R. 6-9). The Council also recognized that Plaintiff has been found to be disabled based upon a subsequently-filed application dated April 28, 2010. (R. 7). The Appeals Council found no basis in Plaintiff's brief, in the additional evidence, or in the later determination of disability to change the ALJ's decision, and denied Plaintiff's request. (R. 1-8). Therefore, the ALJ's decision is the final decision of the Commissioner in this case. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of the Commissioner's decision. (Doc. 1).

## II.     Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)). Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such

evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir.

5

2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses the claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show there are jobs in the economy within Plaintiff's RFC.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff makes numerous allegations of error.  First she claims the ALJ erred in evaluating the opinion evidence, including treating physician opinions, the opinions of other medical sources, and the lay opinions of third parties.  She then argues that the ALJ posed an inadequate hypothetical question because he purportedly accepted the ME opinion without inquiring what the expert meant regarding "normal seizure limitations," and without specifying the extent of post-ictal symptoms such as tiredness and confusion. (Pl. Br. 39-40).  Finally, Plaintiff claims the VE's testimony (that an individual such as Plaintiff who is limited to understanding and following only "very simple instructions" is able to perform work as a mail sorter) conflicts with the Dictionary of Occupational Title's (DOT) requirements (that the mail sorter job requires the ability to carry out detailed but uninvolved written or oral instructions).  (Pl. Br. 41-42).

The Commissioner justifies the ALJ's RFC assessment (including his evaluation of all opinion evidence) as a unit, arguing that "the ALJ's credibility analysis was woven into his RFC determination" (Comm'r Br. 5) and that the ALJ properly evaluated Dr. Applebaum's opinion and explained his reasons for giving greater weight to Dr. Applebaum's Physical Capacities Evaluation than to his opinions regarding "disability." Id. 4-12.  She argues that the ALJ's evaluation of the other treating source opinions was proper and that he provided legitimate reasons for discounting the opinions, including Plaintiff's non-compliance with medication.  Id. at 12-14.  She argues that the ALJ made sufficiently clear that he agreed with the ME's opinion and that although the ALJ did not mention the opinion of the state agency medical consultant, "Plaintiff has not shown that

such omission warrants remand for further consideration." (Comm'r Br. 15). She argues that the ALJ's failure to discuss the opinions presented for the first time to the Appeals Council is justified because they were not before the ALJ, and she explains why, in her view, those opinions do not require remand. Id. at 14-15. In her final argument with regard to the ALJ's RFC assessment, the Commissioner argues essentially that any error was harmless. Id. 16-18. Finally, the Commissioner argues that the ALJ's hypothetical question included all the limitations properly based upon the record evidence, and that although the ALJ did not ask the VE if her testimony was consistent with the Dictionary of Occupational Titles, Plaintiff has shown no inconsistency and "should not be permitted to 'scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.' " (Comm'r Br. 20-21) (quoting Blanchard v. Astrue, 09-1143-SAC, 2010 WL 2925180 *11 (D. Kan. July 21, 2010)).

### III.     Failure to Apply the Correct Legal Standards

The court finds remand is necessary here because of the ALJ's failure to apply the correct legal standard both in evaluating the VE testimony and in failing to consider the opinion of a Social Security Administration (SSA) employee who observed and interacted with Plaintiff.

### A.     Evaluating VE Testimony

Social Security Ruling (SSR) 00-4p instructs that when a VE "provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between [the VE] evidence and information provided in the DOT." West's Soc. Sec. Reporting Serv., Rulings 246 (Supp. 2009). Ruling 00-4p places the affirmative responsibility on the ALJ to "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT," and where VE "evidence appears to conflict with the DOT, . . . [to] obtain a reasonable explanation for the apparent conflict." Id. at 246.

In the decision at issue here, the ALJ recognized the authority of SSR 00-4p, and stated that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (R. 33). However, even a cursory review of the transcript of the ALJ's hearing reveals that the ALJ did not ask the VE if her evidence conflicted with the DOT, and did not seek an explanation of any apparent conflict. Therefore, the record does not support the ALJ's finding that the VE testimony is consistent with the DOT.

The ALJ's error is important in this case because, as Plaintiff points out the ALJ did not restrict Plaintiff merely to "simple instructions," but to "very simple instructions." Plaintiff argues that the RFC limitation to "very simple instructions" conflicts with reasoning level two which is required to work as a mail sorter and which includes the ability to apply "detailed but uninvolved instructions." (Pl. Br. 41) (citing Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997); and Hulsey v. Astrue, 622 F.3d 917, 923 (8th

9

Cir. 2010)). The problem here, is that there is simply no vocational evidence in the record from which to determine whether there is a conflict between the ability to follow "very simple instructions" of which the ALJ found Plaintiff is capable, and the ability to "apply <u>commonsense understanding</u> to carry out detailed <u>but uninvolved</u> written or oral instructions," as is required by reasoning level two in work as a mail sorter. Neither the ALJ in this case nor Plaintiff's counsel is a vocational expert qualified to determine whether the two vocational terms conflict.

  Plaintiff's citation to opinions from the Eighth Circuit Court of Appeals is no more helpful in resolving this issue both because Eighth Circuit opinions are not controlling on this court and because, in the circumstances, the court finds them unpersuasive since judges are not vocational experts qualified to determine such issue. In <u>Lucy</u>, there had been no VE testimony in the proceedings before the Commissioner, and the Commissioner argued before the court that VE testimony was unnecessary because a doctor had opined that Lucy could follow simple instructions, and therefore, he was able to perform the <u>full range</u> of sedentary work. 113 F.3d at 909. The court noted that some unskilled sedentary work required reasoning level two, and that whereas reasoning level one requires the ability to understand and carry out simple instructions, reasoning level two requires the ability to understand and carry out detailed instructions. <u>Id.</u> (citing DOT). While that court's reasoning is logical and appears to answer the issue based upon the common understanding of any layman, the court's reasoning fails to recognize that the issue is a vocational issue and that the terms are vocational terms, the meaning of which

10

may not be intuitively obvious to a layman lacking vocational training and expertise, such as a judge or a lawyer.  Moreover, the <u>Lucy</u> court earlier made the much narrower holding that vocational expert testimony was necessary in the circumstances of that case, because the plaintiff had borderline intellectual functioning.  <u>Lucy</u>, 113 F.3d at 908.  Therefore, it was unnecessary for that court to decide whether the vocational terms conflict, and to that extent, the court's discussion of reasoning level one and reasoning level two is <u>dicta</u>, unnecessary to that decision.

Moreover, as Plaintiff's brief admits, the DOT explains that reasoning level two requires the ability to "apply <u>commonsense understanding</u> to carry out detailed <u>but uninvolved</u> written or oral instructions," 2 U.S. Dep't of Labor, <u>Dictionary of Occupational Titles</u>, 1011 (4th ed. 1991) (emphases added), whereas the court in <u>Lucy</u> shortened the construction to "the ability to understand and carry out detailed instructions." <u>Lucy</u>, 113 F.3d at 909.  The court finds this is a difference which requires the services of a VE to properly explore.  It is possible that, as properly understood by a vocational expert, the ability to follow very simple instructions encompasses the reasoning level two ability to apply <u>commonsense understanding</u> to carry out detailed <u>but uninvolved</u> written or oral instructions.  And, the VE's testimony in this case (that an individual who is able to follow very simple instructions is able to perform work as a mail sorter) implies that it does.  The court acknowledges that it is also possible that the terms, properly understood by a vocational expert, are in conflict, and that the VE might have

11

recognized that fact (and potentially explained it) had she been questioned about potential conflicts, as SSR 00-4p requires.

The Hulsey decision is to no different effect. In fact, the Hulsey court expanded on the DOT definition of reasoning level two and recognized that while reasoning level one necessarily involves only simple instructions, reasoning level two "might necessitate applying 'commonsense understanding to carry out detailed but uninvolved written or oral instructions.'" 622 F.3d at 923 (citing DOT) (emphases added). The Hulsey court did not find that detailed but uninvolved instructions cannot be encompassed within simple instructions. It is enough in this case to find that remand is necessary for the Commissioner to secure vocational evidence to determine whether there is a conflict and, if so, to secure a reasonable explanation--as required by SSR 00-4p.

### B.     Failure to Consider Third Party Lay Opinions

Plaintiff argues that the ALJ erred as a matter of law in failing to consider the lay opinions of Plaintiff's parents and the lay opinion of an SSA employee who conducted a face-to-face interview with Plaintiff at the Social Security field office and completed a Field Office Disability Report on May 24, 2006. The Commissioner argues that the SSA employee's opinion need not be discussed in the decision because the employee is not an "acceptable medical source" whose opinion must be discussed; because the employee's opinion is evidence which is neither significantly probative nor uncontroverted; and because the employee's observations were not attributed to any medically determinable impairment. He argues that the opinions of Plaintiff's parents were merely cumulative of

Plaintiff's testimony and therefore need not be specifically discussed. Finally, the Commissioner argues that Plaintiff has not shown that the failure to discuss the opinions warrants remand in this case.

The parties' briefs did not address Tenth Circuit law regarding discussion of third party opinion evidence in Social Security cases until Plaintiff made an oblique citation to Blea, 466 F.3d at 915, in her reply brief. In the Tenth Circuit, an ALJ is not required to make specific, written findings regarding each lay opinion when the written decision reveals that the ALJ considered that opinion. Blea, 466 F.3d at 914-15; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996). In Adams, the court "decline[d] claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony." 93 F.3d at 715. The Adams court found "that the ALJ considered the testimony of claimant's wife in making his decision because he specifically referred to it in his written opinion," and the court found no error in the ALJ's failure to make specific, written findings regarding that testimony. Id. Thirteen years later, the Tenth Circuit confirmed the rule that an ALJ is not required to make specific written findings regarding a third-party opinion so long as the written decision reflects that the ALJ considered that opinion. Blea, 466 F.3d at 915.

In Blea, the plaintiff argued that remand was necessary because the ALJ failed to discuss or consider the lay opinion of the plaintiff's wife. Blea, 466 F.3d at 914. The Commissioner's decision in Blea did not mention any particulars of Mrs. Blea's opinion,

and never even mentioned that she had testified regarding the nature and severity of her husband's impairments.  Id. at 914.  The Commissioner asserted that there was no reversible error because the ALJ is not required to make written findings about each witness's credibility.  Id.  The court noted that the Commissioner had stated only part of the rule in this circuit and corrected the Commissioner, "[i]n actuality, the ALJ is not required to make specific written findings of credibility only if 'the written decision reflects that the ALJ considered the testimony.'"  Id. at 915 (quoting Adams, 93 F.3d at 715).  The Blea court noted that the ALJ had not mentioned Mrs. Blea's testimony or referred to the substance of her testimony anywhere in the written decision, and concluded that "it is not at all clear that the ALJ considered Mrs. Blea's testimony in making his decision."  Id. (internal quotation marks, brackets, and citation omitted).  Therefore, the case was remanded to consider Mrs. Blea's testimony properly.  Id.

Thus, the law in the Tenth Circuit is clear with regard to opinions from third party lay witnesses.  The decision must reflect that the ALJ included the opinion in his consideration of disability, but he need not discuss the opinion or specify the weight accorded to that opinion.

Here, an argument might be made that the ALJ acknowledged the prior hearing at which Plaintiff's parents testified (R. 19), acknowledge Plaintiff's parents in the decision at issue (R. 20) and stated that he had considered all of the record evidence (R. 20, 22, 23, 31) (which would include Plaintiff's parents' opinions); and thereby adequately demonstrated consideration of those opinions.  The court need not, and does not, decide

14

that issue since remand is necessary in any case because the ALJ did not discuss, and the decision does not reveal that the ALJ considered, the opinion of the SSA employee.

As Plaintiff points out (Pl. Br. 36), and the Commissioner admits (Comm'r Br. 16), the SSA employee who interviewed Plaintiff at the SSA Field Office observed that Plaintiff had difficulty understanding, concentrating, talking, answering, and sitting. (R. 159-60). The employee opined that Plaintiff "has obvious issues," that she was loud and disruptive, and that "[s]he could not remember anything and was very, very difficult to interview." (R. 160). The Commissioner's arguments (that the SSA employee's opinion need not be discussed because the employee is not an "acceptable medical source" whose opinion must be discussed; because the employee's opinion is evidence which is neither significantly probative nor uncontroverted; and because the employee's observations were not attributed to any medically determinable impairment) ignore the Commissioner's regulations and rulings.

The regulations provide that the agency "will consider all of the evidence presented, including . . . observations by our employees." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). SSR 96-7p states that "[i]n evaluating the credibility of the individual's statements, the adjudicator must also consider any observations recorded by SSA personnel who have previously interviewed the individual, whether in person, or by telephone." West's Soc. Sec. Reporting Serv., Rulings 141 (Supp. 2009). Finally, SSR 85-16 instructs that "[d]escriptions and observations of the individual's restrictions by . . . sources (including Social Security Administration representatives, such as district office

15

representatives . . .), . . . , must also be considered in the determination of RFC." 1983-1991 West's Soc. Sec. Reporting Serv., Rulings 356 (1992).

The Commissioner may not simply ignore her own regulations and rulings. Nonetheless, she is correct to argue that evidence need not be discussed in the decision if it is neither significantly probative nor uncontroverted. The record must demonstrate that the ALJ considered all of the evidence, but the ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).

It is clear that the employee's opinion evidence is controverted at least to some extent by other record evidence, and that reason might justify a failure to discuss it. However, it is by no means clear that the evidence is not significantly probative. This is a very close case in which there is significant evidence supporting disability. Four treating sources, Dr. Lauchland, Dr. Khalid, Dr. Applebaum, and Dr. Feuer, provided opinions which, if accepted, would require a finding of disability. (R. 24-31). At one point, a state agency physician opined that Plaintiff's condition meets Listing 11.03. (R. 248). The ME testified that Plaintiff has a "significant seizure disorder" and is on a vagal nerve stimulator which usually leads to an automatic determination that the claimant meets a listing. (R. 515). The ME testified that Plaintiff also has serious psychiatric issues because "she handles her psychotropic [medication] as she sees fit also, and there was a

16

lot of problems with that." (R. 516). In these circumstances, the opinion of an SSA employee (who presumably has some experience dealing with disability claimants) that Plaintiff has such extensive difficulties,"has obvious issues," was loud and disruptive, could not remember anything, and was very, very difficult to interview is without doubt significantly probative, and must be discussed in the decision. This is not to say that every SSA employee opinion in every record must be discussed in every case, but in circumstances such as are presented here, it was error for the ALJ not to indicate in the decision that he had at least considered the specific opinion at issue.

### C.      Final Comment

The court finds it necessary to make one final comment with regard to the decision at issue here. The findings of the ALJ when considered chronologically through time were very confusing to the court. The ALJ found that Plaintiff's prior applications were denied on January 19, 2005 and could not be reopened (R. 20), yet he did not state that administrative res judicata applied to the period before that date. Moreover, he acknowledged that Plaintiff's date last insured for Title II (SSD) benefits was September 30, 2003 (R. 19 n.1, 22), yet he did not find that Title II benefits could not be awarded in this case because of the January 19, 2005 finding that Plaintiff was not disabled. The ALJ considered all of the record evidence before January 19, 2005 despite the fact that the only application which was truly at issue here was the Title XVI (SSI) application filed on October 1, 2007, and he made findings regarding disability "from April 18, 2003

17

through the date of this decision" with respect to both applications. (R. 33) (citing 20 C.F.R. §§ 404.1520(g) and 416.920(g) (relating to SSD and SSI, respectively)).

The ALJ stated that Dr. Khalid "began treating the claimant in December 2005," "last treated the claimant in December 2006," and provided an opinion letter on February 8, 2007. (R. 30). He recognized that Dr. Feuer treated Plaintiff from December 16, 2005 through December 8, 2006 and provided an opinion letter dated February 13, 2007. Id. He then recognized that Plaintiff's Title XVI (SSI) application was filed on October 1, 2007, but found that Dr. Khalid's and Dr. Feuer's opinions could be given no weight because they do not relate to the relevant period after October 1, 2007. (R. 30, 31). However, this finding ignores two critical facts; (1) that the regulations require the Commissioner to "develop your complete medical history for at least the 12 months preceding the month in which you file your application;" 20 C.F.R. §§ 404.1512(d), 416.912(d); and (2) the Appeals Council's instruction on remand (which the ALJ had already acknowledged) that it is appropriate to consider medical opinions which were formulated before a claimant filed his application for SSI benefits. (R. 20) (citing (Ex. 5B) (R. 86-89)).

On remand, this confusion with the applicability of the regulations chronologically over time must be considered and explained or corrected.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42

U.S.C. § 405(g) REMANDING this case for further proceedings consistent with this opinion.

Dated this 22nd day of April 2013, at Kansas City, Kansas.

s:/ John W. Lungstrum  
**John W. Lungstrum**  
**United States District Judge**